# UNITED STATES
### v.
# JOAQUIN BARREIRO.

---

San Juan, Criminal, No. 442.

INDICTMENT FOR MAILING OBSCENE MATTER.

1. Under an indictment brought under § 3893 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 2658), for mailing matter alleged to be obscene, lewd, and lascivious, Held that the evidence was insufficient as to the first, third, and fourth counts, and the jury were instructed to find the defendant not guilty as to those counts, and the question was submitted to them as to the guilt or innocence of the defendant under the second count.

United States v. Barreiro.

2. Under authority of Swearingen v. United States, 161 U. S. 446, 40 L. ed. 765, 16 Sup. Ct. Rep. 562, Held that matter which is not obscene, lewd, or lascivious in the sense of sexual impurity, but is merely vulgar and filthy, and as to the party it is directed at, even libelous, is not within the purview of § 3893.

3. Where a cartoon and the printed matter connected with it are said to refer to, or call to mind, a story said to be well known in the community, which the evidence tends to show is sometimes told and understood in a decent way, but generally as a vulgar, filthy, lewd, obscene, and lascivious story, Held that it is for the jury to say whether defendant so intended the story in question, and whether it was, in fact, under all the circumstances, so understood by those into whose hands the publication or cartoon was liable to fall. Such determination is a question of fact, and not one of law.

4. Lèse-majesté laws are unknown to the jurisprudence of the United States.

Case tried November 17, 1909.

Mr. José R. F. Savage, United States Attorney, for the government.

Mr. T. D. Mott, Jr., attorney for the defendant.

The facts in this case were about as follows: The defendant was publisher of a periodical known as "El Carnaval," which had a general circulation throughout the island of Porto Rico, and for the circulation of which he used the postoffice of the United States, sending it out as second-class matter.

In the month of May, 1909, after the President of the United States sent his message to Congress, regarding the deadlock of the Porto Rican legislature, and the failure of the house of delegates to make any appropriations for the carrying on of the insular government for the ensuing fiscal year, and in con-

sequence of which the "Olmsted law," appropriating a sum equal to the appropriations of the previous year, was enacted by Congress, and during the excitement on the island incident thereto, the defendant published several articles in his periodical, some of which were directed against the President of the United States and which were, to say the least, coarse, vulgar, and filthy, and probably libelous. An indictment containing four counts was returned against him therefor by the grand jury of this district under § 3893 U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 2658. Additional facts can be gathered from the instructions to the jury which RODEY, Judge, gave as follows:

This is a prosecution by the United States of America against the defendant, Joaquin Barreiro, under an indictment duly found and returned against him, under date of November 4th, instant, charging him with unlawfully and knowingly depositing, and causing to be deposited, in the postoffice at San Juan, in this district, for mailing and delivering, certain nonmailable matter. The indictment is returned under § 3893 of the Revised Statutes of the United States, which reads as follows:

"Sec. 3893. Every obscene, lewd, or lascivious book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character, and every article or thing designed or intended for the prevention of conception or procuring of abortion, and every article or thing intended or adapted for any indecent or immoral use, and every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where or how, or of whom, or by what means any of the hereinbefore-mentioned matters, articles, or things may be obtained or made,

United States v. Barreiro.

whether sealed as first-class matter or not, are hereby declared to be nonmailable matter, and shall not be conveyed in the mails, nor delivered from any postoffice, nor by any letter carrier; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable matter, and any person who shall knowingly take the same, or cause the same to be taken, from the mails for the purpose of circulating or disposing of, or of aiding in the circulation or disposition of the same, shall, for each and every offense, be fined upon conviction thereof not more than five thousand dollars, or imprisoned at hard labor not more than five years, or both, at the discretion of the court. And all offenses committed under the section of which this is amendatory, prior to the approval of this act, may be prosecuted and punished under the same, in the same manner, and with the same effect as if this act had not been passed: Provided, that nothing in this act shall authorize any person to open any letter or sealed matter of the first-class, not addressed to himself."

The indictment consists of four counts, and each of them is for mailing copies of the issue of May 16, 1909, of a periodical known as "El Carnaval," a copy of which has been introduced in evidence before you, of which the defendant is said to be the editor, owner, or publisher. The first count charges him with having so deposited such copies of said issue of said periodical containing an article entitled, "Que Desengaño." The second count charges him in like manner with depositing such copies of said issue of said periodical containing an article entitled, "Y Ahora." The third count also charges him in like manner with depositing certain copies of said issue of said

United States v. Barreiro.

periodical containing printed pictures entitled, "Antes del Parto" and "Despues' del Parto." And the fourth count charges him with depositing such copies of said issue of said periodical containing an article entitled, "Por Esas Calles."

Certain legal questions regarding the matter have been argued out at length between counsel and the court, and therefore I am constrained to instruct you as matter of law that the evidence under the first, third, and fourth counts is insufficient to sustain the same, and you will therefore at all events find the defendant not guilty as to them in the form of verdict that will be given you.

The question of the guilt or innocence of the defendant under the evidence is submitted to you as to the second count. This count relates to the picture entitled, "Y Ahora," and evidence has been introduced before you tending to show that the printed matter beneath it refers to what is said to be a well-known story. Evidence has been introduced before you tending to show that this is a story generally known throughout Porto Rico, by those speaking the Spanish language, and some of the evidence tends to show that this story, whenever told, is told in a vile, vulgar, and filthy manner, and the government contends that it is an obscene, lewd, and lascivious story. There is evidence also tending to show that this story can be, and is often told in a decent and proper sense, and in decent and proper language. The government contends that this reference by this picture referred to in the second count of the indictment calls to the mind of every one knowing the story its vulgar character, and that it was generally understood in that sense.

It is for you to say on the evidence before you whether this fact has been proved beyond a reasonable doubt, and if you

United States v. Barreiro.

believe on the evidence beyond a reasonale doubt that the refer-
ence to this story in the exhibit before you suggested the story,
and that the same is generally understood to be, and is an ob-
scene, lewd, and lascivious story, and that any reference to it
suggests that form of immorality which has relation to sexual
impurity; and if you further believe on the evidence beyond
a reasonable doubt that the defendant did deposit in the post-
office at San Juan, for delivery through the mails, such picture
so suggesting such obscene, lewd, and lascivious story, then it
is your duty to find the defendant guilty as charged in the sec-
ond count of the indictment.

If, on the other hand, you do not believe from the evidence
beyond a reasonable doubt that the reference beneath the picture
in question to such story did so suggest the same in such obscene,
lewd, and lascivious sense, but that it suggested the same in a
decent sense, then it is your clear duty to give the defendant
the benefit of that doubt, and find him not guilty as to the
count in question.

In criminal prosecutions the government does not ask you
to burden your consciences with the conviction of any defendant
unless it proves his guilt as charged beyond a reasonable doubt,
and the question always arises in the minds of jurors as to what
a reasonable doubt is. Now the best definition, perhaps, that
can be given of what a reasonable doubt is, is to say that it is
a reasonable and sensible doubt which remains in the minds of
jurors as to the guilt of a defendant after a full, fair, and
impartial consideration of all the facts and circumstances of
the case, and is not a mere fanciful possibility of the innocence
of a defendant.

You are instructed that there **are no** *lèse-majesté* laws under

United States v. Barreiro.

our government, and therefore the fact that this defendant, in the periodical in question, may have coarsely and vulgarly referred to the President of the United States, should not in any manner affect your judgment as to his guilt or innocence upon the count that is left for your consideration here. That count must stand or fall as and of itself under the evidence and the law as given you in these instructions. The statute in question has been amended to take effect next January, so that it will include within its purview not only that which is obscene, lewd, or lascivious, but also everything which is filthy as well.

You will therefore perceive that the question under the second count of the indictment, as left to you, is to say whether or not the evidence before you shows beyond a reasonable doubt that the matter contained in that portion of the exhibit covered by such count is of the character referred to, and if you believe beyond a reasonable doubt on the evidence that it is, it is your sworn duty to convict the defendant. And on the other hand, if you do not believe as stated, it is equally your sworn duty to acquit him.

You will have noticed from the reading of the statute that the court can make the punishment fit the crime in case you should find the defendant guilty, because it may be a fine of from $1 to $5,000, and imprisonment for any period up to five years, or both, at the discretion of the court.

You must not forget that courts and juries have no dignities except their own to sustain, and no politics to favor, and simply have a plain duty to perform, from which they should not shrink. And while, on the one hand, it is plain from the law that the government of the United States refuses to lend the aid of its postoffice department to those who would corrupt the mor-

United States v. Barreiro.

als of the community, yet because the statutes governing the
subject are highly penal they must, in a measure, be strictly
construed, and where the facts do not come within the law there
is no crime committed; but on the other hand neither courts nor
juries should construe any law so strictly as to defeat the very
purpose of the legislature. Therefore the question is left to
you, as men of common sense and versed in practical affairs,
to say on all of the evidence whether this defendant has been
shown to be guilty beyond a reasonable doubt; if he has, do not
hesitate to say so; if he has not, in like manner do not hesitate
to say so.

Neither your acquaintance with, nor your sympathy for the
defendant, or his friends, should have any effect as to your ver-
dict, and neither should any fear of censure for your verdict or
approval of the same affect you in finding it. To permit any
of these things to have any effect with you would be a species
of moral cowardice, and men who will permit themselves to
be governed by such considerations when serving as jurors
would soon make a farce out of the administration of justice.
No consciences are bound by an oath in this case but yours,
and on the one side your oath is as sacred to stand between
the government and this defendant as it is on the other to obey
the law and punish its violators.

This cause is different from a civil cause. In civil cases you
have heretofore tried at this term of court you were instructed
that you could decide any point or any whole case upon a mere
preponderance of the evidence. That, of course, is proper, be-
cause such a suit involves only money or property rights, and
does not involve the liberty of a citizen of which the law is prop-
erly jealous. But in a criminal case such as this is, as stated

United States v. Barreiro.

to you before, the law tells you that you need not burden your consciences with a conviction until the guilt of the defendant is proved by the evidence, to your satisfaction beyond a reasonable doubt, as heretofore given you.

You, of course, are the sole judges of the weight of the evidence, and of the credibility of any and all witnesses, and if you believe that any witness has wilfully sworn falsely to any material fact in the case you may disregard the whole or any part of such witness' testimony, unless the same is corroborated by other evidence, facts, or circumstances in the case.

As the case stands, but one form of verdict will be given you, and you will see by it that, at all events, you are to acquit the defendant as to the first, third, and fourth counts of the indictment; and as to the second count, you are to decide if he is guilty or innocent on the evidence, and these instructions, for yourselves.

When you have arrived at a verdict you will cause it to be signed by one of your number as foreman, whom you will select for that purpose, and then all of you must return it into court.

It is hoped, gentlemen, as I instructed you in the civil cases you have tried, that you will, if possible, arrive at a verdict, because these trials are expensive both to the government and to the defendant, but of course your verdict must be arrived at under the law as given you here, and the facts as you yourselves shall find them. It is not meant by this intimation that any juror should give up his opinion to that of any other if he believes that injustice would be done to either the government or the defendant by so doing. All that is intended, is to induce you as reasonable, practical, and sensible men to deliberate together and argue out the points involved to each other, so

United States v. Barreiro.

that either you may be induced to agree with those who differ from you or convince the latter that you are right.

The court desires to impress upon you that the constitutional guaranties of religious freedom and freedom of the press have nothing to do with a statute such as is here involved, because these guaranties cannot be made a shield for violations of criminal laws, which are not designed to restrict religious worship or a free press, but are designed to protect society against purposes that are immoral and corrupting. It is for you to say on all the evidence whether it has been proven beyond a reasonable doubt as here defined, that the matter submitted to you against this defendant has that tendency in the sense here defined.

You may take to your jury room where you deliberate the exhibits that have been introduced in evidence before you, the indictment, and these instructions, and when you have arrived at a verdict return it into court as indicated, and the defendant and the court will have to be satisfied with it. The cause is with you, gentlemen.

The jury failed to agree.